Filed 6/29/15  In re A.W. CA1/1
Received for posting 7/2/15
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.W. et al., Persons Coming Under the Juvenile Court Law. | |
| MENDOCINO COUNTY HEALTH AND HUMAN SERVICES AGENCY, CHILDREN AND FAMILY SYSTEM OF CARE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CLARENCE W., <br><br> Defendant and Appellant. | A143221 <br><br> (Mendocino County Super. Ct. Nos. SCUK-JVSQ-1415763, SCUK-JVSQ-1415764, SCUK-JVSQ-1417027) |

Appellant Clarence W. (father) and Nicole S. (mother) have long been involved in juvenile dependency proceedings under Welfare and Institutions Code section 300.[1] Most recently, the juvenile court denied father reunification services because of his history of substance abuse and because reunification services for him had previously been terminated.  In this appeal, father does not challenge that decision but instead challenges the court's decision to deny him visitation with his children while he is in prison.  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.  Mother does not challenge the juvenile court's disposition order and is not a party to this appeal.

1

# I.
## FACTUAL AND PROCEDURAL
### BACKGROUND

Respondent Mendocino County Health and Human Services Agency, Children and Family System of Care (Agency) has been involved with this family since at least August 2009, when it filed a dependency petition relating to mother's and father's two older children and an older child of mother who is unrelated to father (and who is not the subject of this appeal). The juvenile court sustained allegations that the children were at substantial risk of harm due to domestic violence between father and mother, which included incidents in which father was arrested and charged with abuse; that father and mother both violated a stay-away restraining order imposed as a condition of placing the children with mother after the dependency petition was first filed; and that father had a history of substance abuse, evidenced by several alcohol-related arrests, hindering his ability to protect and parent his children. The children were placed with mother, and services were ordered for father.

Shortly thereafter, the minors were detained when the Agency filed a supplemental petition alleging that father was living with mother in violation of the court's stay-away order. The court sustained the supplemental allegations, but it ordered the minors be returned to mother's custody. It also ordered father to receive family-reunification services and be permitted to have weekly, supervised visits with his children lasting at least one hour.

Father made progress on his case plan, and in September 2010 the juvenile court ordered that he regain physical custody of his children, who remained dependents of the court. But, less than a month later, the Agency filed a supplemental petition alleging father had tested positive for alcohol, failed to show up for a scheduled drug test, and failed to attend a group meeting as part of his substance-abuse program. Father first voluntarily left the family home under an agreement with the Agency. At a jurisdiction hearing in November 2010, the juvenile court found the supplemental allegations true, but it permitted father to return to the family home.

By the time the disposition hearing took place the following month, however, mother and her children had moved out of the family home in order to keep the children safe, and the Agency reported that father had not complied with the requirements of a family dependency drug court. Father also was not participating in treatment for domestic violence and anger management. At the disposition hearing, the juvenile court found that father's progress in his case plan had been minimal and that he had "a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition." (§ 361.5, subd. (b)(13).) The court terminated services for father and terminated him from the drug court. It also ordered, however, that father be permitted supervised visits with his two children a minimum of every other week, because father was "important to his children and I don't want to break that tie." The children remained placed with mother, who was to continue receiving family-maintenance services.

The juvenile court dismissed dependency jurisdiction in April 2011, finding that continued court supervision was unnecessary because mother was doing well with the children. Mother was granted legal and physical custody, and father was granted visitation with his two children a minimum of once a month. Father was ordered to be clean and sober at the time of the visits.

Mother and father had a third child in November 2011. In the ensuing three years, father was arrested at least six times, mostly on charges related to domestic violence against mother: three times in 2012, once in 2013, and twice in 2014. He received two separate 90-day jail sentences related to spousal abuse.

In June 2014, all three of mother's and father's children, as well as mother's older child with a different father, were the subject of a new dependency petition. It is a visitation order entered in proceedings related to this petition that gives rise to the current appeal. The petition alleged that mother had a current drug problem and had driven her children to an Agency office while under the influence of a controlled substance. Mother was alleged to be homeless, and the children were reported to be dirty, disheveled, and

3

hungry. At this time, father was in a secure residential drug-treatment program that was ordered as a term of probation. The children were detained and placed in a protective foster-care home that was connected to the Indian tribes of which the children were either registered or potential members.

During the Agency's investigation, the social worker received reports that the children had witnessed domestic violence between mother and father, that father had yelled at the children when he was drinking, and that father slapped the backs of his three children's heads. The Agency also learned that father had been expelled from his substance-abuse treatment program a month before he was scheduled to complete it. As of the date the July 2014 jurisdiction report was prepared, father had not met with the social worker. The Agency planned to assess him for visitation "as soon as he steps forward and meets with the social worker." The Agency was unable, however, to obtain father's current mailing address.

Father was not present at the jurisdiction hearing held in July 2014, and his whereabouts were unknown. The juvenile court sustained allegations in the new petition under section 300, subdivision (b) (failure to protect), including allegations that father had a chronic history of substance abuse and violent behaviors, that he also had an extensive history of criminal arrests and convictions for drug-related offenses and crimes of violence, and that the children had witnessed domestic violence between mother and father. The Agency scheduled meetings with father in advance of the disposition hearing, but he failed to show up.

At the beginning of the scheduled disposition hearing in August 2014, the social worker reported that father had been arrested that morning. The hearing was continued so that the Agency could prepare a disposition report. Father was present at the continued hearing. He was apparently incarcerated in the local jail at the time, and he reportedly was scheduled to be sentenced later that month to state prison and receive a two-year sentence for violating the terms of his probation, with an expected release date in summer 2015. Mother also was incarcerated in August 2014 after she was arrested

4

that month on charges of forging her name on a stolen check and trying to cash it at a Ukiah bank.

Following another continuance, the juvenile court held a contested disposition hearing. The director and case manager for Indian Child and Family Preservation Program (a consortium of four tribes) testified as an expert in dependency issues under the Indian Child Welfare Act of 1979 (25 U.S.C.A. § 1901 et seq.) (ICWA). She reported that the minors had been placed in a "very, very wonderful home" that was tribal-approved, and she expressed her opinion that it was in the children's best interest to remain placed in that home.

The ICWA expert further testified that she had discussed the case at length with an ICWA advocate for the Sherwood Valley Band of Pomo Indians, where father is a registered member. It was their opinion that reunification services for father would not be beneficial to the children, based on the history of the case and the fact that father was "going off to prison." As to whether father should have visitation with his children, the expert testified that "it would be hard for me to say that it was a good thing for the kids to have to go to prison," and that "I just don't think it's a good idea myself." When asked whether the children would be harmed if they were to visit with father, the expert testified: "Well, I'm not sure, you know, how they—they set up visitations in the prison system. But I—I believe there is just a lot of, I believe, domestic violence between him and the mom while they had the children. So I don't know, you know, if that would be a good idea for the kids to have to go through that and go down and visit and do all of those things. I don't know how to supervise the visits there."

After the expert testified, the social worker addressed the juvenile court about recent visitation arrangements for mother and father, stating that "the parents have both asked to have visitation while they were in jail, especially since [father] is leaving tomorrow, I believe, for prison. We did attempt to set that up. [The ICWA advocate] had volunteered to transport the children, but the children did not want to go and we didn't see a point in forcing them to have to go to a jail. So that was the status at this

5

point.  I just wanted them [mother and father] to know because I haven't been able to talk to them about that since this occurred."

Father's counsel then made a formal request that father receive visitation while in prison, and she argued there was an insufficient showing that such visits would be detrimental to the children.  The juvenile court and the parties' attorneys then discussed the issue, without further sworn testimony.  The minors' counsel represented that taking the minors to the local jail had been a "challenge" and had "not worked well" because the visits had taken place through glass, a situation that is "very confusing for children to try to understand."  County counsel said he was informed by the social worker that father was "going to be possibly placed about three and a half hours from Ukiah.  And due to the distance—three hours.  And due to the distance and the age of the children [then six, five, and two], we believe visitation would be detrimental because he would be in prison."  Father's counsel disagreed, arguing that "the children having to sit in a car for three hours and visit their father through glass, I'm not sure what the detriment would be other than them being uncomfortable.  Because it's a prison setting, but certainly they wouldn't be at risk of physical harm or emotional harm by doing something that's just new and uncomfortable for them."  According to father, the children had previously visited him when he was incarcerated in Manteca, and they had been transported four-and-a-half hours for that visit.  The social worker stated that it would not be reasonable to require the children to travel six hours in a single day to visit with father.

The juvenile court ordered that mother receive reunification services but that no services be offered to father because of the previous termination of reunification services and his chronic substance abuse.  (§ 361.5, subd. (b)(10), (13).)  Mother did not appeal, and father does not challenge the order denying him reunification services.  As for the children's visitation with father, the juvenile court concluded that it would be unreasonable to require the children to travel with a social worker or foster parent three hours each way to have a short visit with father, and it concluded that face-to-face visits with father while he was in state prison would be detrimental.  The court did not, however, rule out all visitation.  It ordered that father could write to the children (through

6

the social worker) as often as he wanted, and he would have monthly telephone calls with the children.

## II.
### DISCUSSION

As a general rule, a parent whose child has been adjudged a dependent minor shall receive court-ordered reunification services. (§ 361.5, subd. (a).) Such services need not be provided, however, when the juvenile court finds by clear and convincing evidence that certain statutory exceptions (or "bypass provisions") apply. (*Id.*, subd. (b).) Here, the juvenile court denied father reunification services based on two bypass provisions allowing reunification services to be denied when such services have been previously terminated (*id.*, subd. (b)(10)) and when the parent has engaged in chronic substance abuse (*id.*, subd. (b)(13)). When reunification services are bypassed, the court "*may* continue to permit the parent to visit the child *unless* it finds that visitation would be detrimental to the child." (*Id.*, subd. (f), italics added.) Thus, when a juvenile court finds, as the court did here, that visits would be detrimental to the child, it *must* deny visitation. (*Ibid.*)

Father contends insufficient evidence supported the finding that it would be detrimental for the children to be forced to be driven three hours each way to visit father while he was incarcerated. He argues that this finding was mostly supported by statements made by the parties' attorneys rather than by sworn testimony. We are not persuaded. Not only did father fail to object below on the grounds of lack of sworn testimony, but also sworn testimony about detriment *was* presented by the ICWA expert who testified that visitation was not a "good idea," an understatement given the children's young ages and the undisputed history of domestic violence they witnessed while in father's care.

In any event, we would still sustain the juvenile court's order even if we were to conclude that there was insufficient evidence of detriment. Father argues that "absent a showing of detriment" he had a "right" to visitation. He is mistaken. In light of the bypass of reunification services, the juvenile court retained discretion to deny visitation

7

regardless whether there was sufficient evidence of detriment. The word "may" in the last sentence of section 361.5, subdivision (f) is permissive, meaning the juvenile court has discretion to permit or deny visitation when reunification services are not ordered. (*In re J.N.* (2006) 138 Cal.App.4th 450, 458.) In other words, a right to visitation arises only when a juvenile court *orders reunification services* to incarcerated parents under section 361.5, subdivision (e), because visitation is an essential element of a reunification plan. (E.g., *In re Dylan T.* (1998) 65 Cal.App.4th 765, 768, 770-771, 774 [absent certain circumstances, visitation must be provided to incarcerated parent *where reunification services are ordered* unless visits would be detrimental to minor].) But where, as here, reunification services have been bypassed under section 361.5, subdivision (b)(10) and (13), the juvenile court retains discretion to deny visitation under section 361.5, subdivision (f), even in the absence of a finding of detriment, because "visitation is not integral to the overall plan when the parent is not participating in the reunification efforts." (*In re J.N.*, *supra*, 138 Cal.App.4th at pp. 458-459.)

We cannot conclude that the juvenile court abused its discretion in denying face-to-face visitation while father was incarcerated. Ordering the children to travel three hours each way to visit their father in state prison can rationally be considered to be detrimental. And the court did not deny all contact between father and the children. It permitted monthly phone calls and unlimited contact by mail during father's incarceration. The court's order warrants a "very high degree of deference," and in our view it does not exceed the bounds of reason. (*In re J.N.*, *supra*, 138 Cal.App.4th at p. 459.) "Because [father] failed to show the court erred in denying [him] visitation under the circumstances of this case, [his] attack fails." (*Id.* at p. 460.)

### III.
### DISPOSITION

The juvenile court's order is affirmed.

8

_____
Humes, P.J.

We concur:


_____
Margulies, J.


_____
Dondero, J.

9